34833. WILSON *v.* NAUMAN.

DECIDED SEPTEMBER 19, 1953.

*Frank A. Bowers,* for plaintiff in error.

*Charles O. Baird, Jr.,* contra.

TOWNSEND, J. Augustus T. Nauman filed suit in the Civil Court of Fulton County against John G. Wilson for the principal sum of $1,575.92, this figure allegedly being the excess of advances by the plaintiff to the defendant over commissions of the defendant which had been retained by the plaintiff to cover the total of such advances, under an agreement whereby the defendant sold insurance for the plaintiff on a 50-50 basis. The pleadings are set out in detail in *Wilson* v. *Naumann,* 87 *Ga. App.* 824 (75 S. E. 2d 295), and the decision therein, holding that the petition set out a cause of action for recovery of the advances under an express agreement to that effect between the parties, is now the law of the case.

It is also the law of the case, under that decision, that the law of *Smith* v. *Franklin Printing Co.*, 54 *Ga. App.* 385 (2) (187 S. E. 904), as follows, is controlling: "Where a principal advances money to his agent on a drawing account against his commission to be earned as a saleman for selling merchandise, and his commission does not amount to the sum advanced, the employer cannot, in the absence of an express or implied agreement, or promise to repay any excess of advances over the commissions earned, recover such excess from the employee."

The case is here on the general grounds only, after a jury verdict in favor of the plaintiff and, as stated in the brief of counsel for the plaintiff in error, "the sole question to be determined is whether the evidence on the trial supported the necessary and vital allegations of the petition concerning a promise on the part of Wilson to repay Nauman such excess in his drawing account from Nauman."

The plaintiff's evidence was to the effect: that he refused to hire the defendant, as he was in no position financially to take on employees; that the defendant "asked me if I would reconsider and give him $150 a month, or I mean $150 a month to be paid back, and at the end of this time, if I felt like continuing the agreement, then we could get together and talk about it"; that the defendant then gave the plaintiff a note for $150 and began trying to sell insurance for him and the plaintiff advanced the defendant approximately $150 in small sums; that, two or three months later, the plaintiff felt it might be wise to discontinue the agreement because he feared he would lose money, that, however, "Mr. Williams was guaranteeing that I would not lose any money"; that, at the second discussion, the defendant represented that he had various accounts in their closing stages, and "on that basis I agreed to continue along with Mr. Wilson"; that they had a discussion about terminating the first agreement, about April 1, 1950, and "we agreed to go ahead, and that I would let him have a small advance weekly against his commissions that would be earned. It was some nominal amount, $25 or $30 or something like that. I couldn't advance him any considerable amount of money. . . On this deal, the agency was to retain 50% of the commissions and he was to have credit for the other 50%. . . There was no definite amount

to this drawing account. . . At one time, I cut his weekly drawing account down to $24 a week because the commissions earned were not sufficient for me to give him any more. . . He kept reminding me that I would get it all back later. Toward the end of 1951, I told Mr. Wilson I thought we were going to have to terminate our relationship because at that time he owed me a considerable amount of money. . . He informed me he would make an effort to borrow the money and repay me the amount I had advanced him after giving him credit for commissions earned. . . He told me finally that he just wasn't able to get it. . . When he wasn't successful on the borrowing, I asked him again to give me the money, and he refused to do it. The first thing I knew, he was working for somebody else."

On cross-examination, the plaintiff testified: that the parties discussed "that in case Mr. Wilson left owing me money on his drawing account, then I would have all of his future renewal business until I got my money back, but in case he didn't owe me, then he would take the business that he had brought with him. . . Yes, I have collected some premiums on business that he brought into my office since he left in May of 1951, some of it was renewed. . . I remember specifically telling Mr. Wilson that unless he gave me a note for what he owed me that I was not going to advance him any more money. He refused to give me the note, and I refused to pay him any more money, then he left." Another witness also testified to hearing the defendant tell the plaintiff that he would try to borrow money to pay back what he owed him.

The defendant's testimony was to the effect that after the first agreement, which involved an express promise to pay back advancements in the sum of $150, as evidenced by a note, the parties had an entirely new and different agreement, the substance of which was that the defendant should work on a drawing account basis; that, as to paying back the money, it was understood only that this would be paid back out of commissions earned, and if the earned commissions were insufficient at the time the agreement terminated, then the plaintiff was to keep the renewal business.

A question of fact was thus presented as to whether or not

there was a promise to repay the indebtedness in any event. It is not denied that, as to the first $150, which was advanced in instalments of $25 and $30 over a period of time *after the note was given*, there was an express promise to repay, but the defendant contends that thereafter the parties had a new and distinct contract amounting to a novation, which terminated the original agreement. As stated in Code § 20-115: "One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties; but if new parties are introduced by novation, so as to change the person to whom the obligation is due, the original contract is at an end." However, "a contract may be renewed between the same parties, as to the same subject-matter and upon the same consideration, without working a novation." *Albany Loan & Finance Co.* v. *Tift*, 43 *Ga. App.* 789 (2) (160 S. E. 661). The evidence in favor of the plaintiff here, taken as a whole, and including evidence of the defendant's promises and efforts to borrow money to repay his indebtedness as to the total sum, and not simply the $150 for which the plaintiff held his note, is sufficient to authorize the finding that the second agreement was a renewal of the first and contemplated repayment in any event, rather than a novation or entirely distinct contract in which repayment was contemplated only out of commissions earned.

The trial court did not err in denying the motion for new trial.

*Judgment affirmed. Gardner, P.J., and Carlisle, J., concur.*