43895, 43896. DANIELS v. ALLEN; and vice versa.

SUBMITTED SEPTEMBER 10, 1968—DECIDED NOVEMBER 26, 1968.

*Brannen, Clark & Hester, Perry Brannen, Jr.,* for appellant.
*Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, Malcolm Maclean,* for appellee.

JORDAN, Presiding Judge. ■ Although the defendant on the main appeal filed two enumerations, he confines his brief to a single issue—whether Paragraph 22 of the Special Agent's Commission Agreement "constitutes an agreement to repay advances in excess of earned commissions when without an agreement such advances could not be collected." This paragraph provides that, "If the company shall for any reason refund any premium, the special agent shall lose all right to commissions on such premium, and shall pay to the general agent, the full amount received by him on account thereof. If the general agent, for any reason, pays to the special agent a commission in advance of the payment of the premium and the premium is

not subsequently collected from the policyowner, the special agent shall repay such commission to the general agent on demand."

Commencing on or about June 15, 1965, the parties entered into what the auditor denominates the "Second Arrangement" whereby the only formal contract remaining in effect was the Special Agent's Commission Agreement containing the excerpt set forth above. The plaintiff, without obtaining any specific further agreement beyond the terms of this contract regarding the repayment of advances, committed himself to pay or advance $600 per month to the defendant if production remained at a certain level. In a letter dated October 6, 1965, however, he disclosed his dissatisfaction, and referring to the monthly advances as a subsidy, expressed a willingness to advance ½ of the previous amount, plus ½ of the commissions payable on business reported paid to the defendant's credit after October 1, 1965. The defendant resigned in November. It is undisputed that the plaintiff paid the defendant $3,048.31 during this period, and the auditor credited the defendant with earned commissions of $1,480.23 as alleged by plaintiff and to the favor of the defendant, an amount in excess of the amount the defendant testified he earned. The auditor concluded that in this aspect of the case the defendant owed the plaintiff the difference of $1,568.08, and avoided the rule in *Wilson v. Nauman*, 88 Ga. App. 782 (1) (77 SE2d 756), to the effect that absent any express or implied agreement to repay, a principal cannot recover the excess of advances over earned commissions, by determining that Paragraph 22 of the formal agreement was "an agreement by the defendant to repay advances in excess of earned commissions."

As we understand the contentions of the defendant, however, the payment to him of a flat monthly rate, which the plaintiff referred to as a subsidy, was as if he were on a guaranteed monthly salary, and not as if he were a commission salesman, and thus outside the provisions of Paragraph 22, or more particularly the second clause of this paragraph.

While the construction placed on Paragraph 22 by the auditor is somewhat broader than the literal language of the agreement,

for by the strict terms of the agreement is does not cover all advances, but only advance commissions, we think the meager evidence as disclosed in the report does authorize a determination that the flat rate monthly payments were intended by the plaintiff and accepted by the defendant as advances (the plaintiff in his correspondence appears to use "subsidy" and "advances" as synonymous terms) based on commissions potentially earned, and thus subject to repayment if never earned, for it is clear that the payments were commenced by the plaintiff and accepted by the defendant on the condition of production at a certain level, and were lowered when the production did not meet these expectations, and that they were never intended or accepted as an outright subsidy, repayable only to the extent of credit for earned commissions.

■ Under the present appellate practice it does not follow from the result reached on the main appeal in this case that the cross appeal is subject to dismissal even though, standing alone, the ruling on the main appeal requires that the judgment of the lower court be affirmed. We recognize, of course, that situations do arise where the judgment of this court on the main appeal leaves nothing for adjudication in the lower court, and that in such cases it is appropriate to dismiss the cross appeal. See *Carpenter v. Stanley*, 118 Ga. App. 113 (162 SE2d 761). The Act provides in pertinent part, however, that "the appellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him, and in no case shall the appellee be required to institute an independent appeal on his own right, although the appellee may at his option file an independent appeal." Ga. L. 1965, pp. 18, 21; Ga. L. 1966, pp. 493, 496 (*Code Ann.* § 6-803). Even if the main appeal be dismissed, it does not invalidate the cross appeal if the appellee would stand to benefit by a decision thereon. Ga. L. 1965, pp. 18, 29 and pp. 240, 241 (*Code Ann.* § 6-809 (c)). Moreover, although the plaintiff designates his appeal as a cross appeal, the notice is sufficient in substance and was filed in time (see *Code Ann.* § 102-102 (8)) to meet the requirements for an independent appeal.

■ The three issues raised by the cross appeal are based on

the refusal of the auditor, as approved by the court, to recognize an instrument executed to terminate what the auditor denominates the "First Arrangement," which purports to cover indebtedness to June 15, 1965, as an enforceable promissory note, including interest and attorney's fees as provided therein, or, with a letter from the plaintiff dated June 17, 1965, as showing an account stated. The auditor actually allowed the plaintiff $897.86 under the "First Arrangement," which the defendant admitted he owed, concluding, in order to reach this result, the absence of an enforceable agreement or an account stated, and that the evidence did not sustain the plaintiff's claim of $1,811.46 due under the note, plus interest and attorney's fees.

The instrument, regular on its face as a promissory note payable on demand for a stated amount, with interest at 6% per annum, plus 15% attorney's fees if collected by law or through an attorney, additionally provides that, "Should subsequent investigation prove this figure (totalling $4,458.67 as above) to be in error I [Jack A. Daniels] agree to amend this note to the proper amount if it be increased and John L. Allen agrees to reduce it should it be a lesser amount." The letter from the plaintiff, in which he forwarded the note to the defendant for signature, purports to detail how the plaintiff arrived at the amount of the indebtedness.

This being an action by the payee against the maker of the note we think it is immaterial whether the conditions placed on the promise to pay a sum certain upon the subsequent discovery of errors in the accounting render the sum uncertain and invalidate the instrument as negotiable paper within the requirements of §§ 3-104 (b), 3-105, and 3-106, of the Uniform Commercial Code—Commercial Paper. See Ga. L. 1962, pp. 156, 239-241; Code Ann. §§ 109A-3—104 (b), 109A-3—105, 109A-3—106. Assuming that the note was non-negotiable because the stipulated sum was subject to adjustment upon the discovery of errors in in the accounting (see, in this connection, First Nat. Bank of Dothan v. Elba Hardware &c. Co., 222 Ala. 493 (137 S 173)), the note nevertheless discloses a contract between the parties, the intent of which is clearly discernible, a promise to pay $4,458.67 on demand, plus interest, and attorney's fees if collected by law

or through an attorney, based on an indebtedness "arising from the chargeback of expense allowances paid, annualized commissions unearned, and other advances" before June 15, 1965, subject to adjustment in amount upon the discovery of any error in the accounting. We think it should be enforced in accordance with its terms.

In a somewhat analogous situation the Supreme Court of this State remarked: "The general rule of the law, as applicable to the facts of this case, undoubtedly is, that if the defendant signed the drafts with a full knowledge of the state of the accounts, and in liquidation or settlement of the same (in the absence of any fraud, accident or mistake) he is prima facie bound thereby for the payment of the money expressed therein, and if there is any fact or facts going to show that it was not the intention of the parties that the drafts should be a full and final settlement and compromise of the subject matter of the accounts for which the drafts were given, the burden of proof to show such fact or facts is upon the defendant, and he should rebut the presumption of the law against him by clear and satisfactory evidence." The transaction showed an accord, but not a satisfaction. *McLendon v. Wilson, Callaway & Co.*, 52 Ga. 42, 46.

In an earlier Illinois case, the Supreme Court of that State, in recognizing the enforceability of an action based on a promissory note, stated: "In this case, there has been a dissolution [of a partnership] and final settlement, and a note given for the balance ascertained to be due, with the stipulation that the errors and omissions in the settlement may be deducted as payments on the note. It was the intention of the parties, that this defence might be interposed to the note, in whosoever hands it might be. . . . The account which had been written up, and by which the parties settled, will be presumed to be correct, and the investigation will necessarily be confined to such items as it is alleged were improperly charged, and such other items as were overlooked in the settlement. The burthen of proof will, of course, devolve upon the party alleging the error." Frink v. Ryan, 4 Ill. 322, 325. Also, see *Stone v. First Nat. Bank of Atlanta,* 117 Ga. App. 802 (1, 2) (162 SE2d 217), recognizing the binding effect of a note executed pursuant to an accounting by partners.

Viewed in the light of the foregoing principles we think the face amount of the note establishes prima facie the amount of the original indebtedness of the defendant to the plaintiff incurred before June 15, 1965, less those credits which the plaintiff admittedly recognizes to reduce the principal to $1,811.46, and that the burden rests on the party asserting error to show error, and specifically on the defendant to produce evidence, as a matter of affirmative defense, to show any errors in the accounting to reduce the amount further, as well as any subsequent payments or credits, short of the admitted indebtedness of $897.86, and that the plaintiff is also entitled to interest and attorney's fee in accordance with the provisions of the note.

*Judgment affirmed on the main appeal; reversed on the cross appeal with direction for further action not inconsistent with the foregoing opinion. Pannell, J., concurs. Deen, J., concurs in the judgment.*